**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VARINDER SINGH,<br><br>       Petitioner,<br><br> v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>       Respondent. | No.   20-70050<br><br>Agency No. A209-393-493<br><br><br>ORDER |

Before:  McKEOWN and GOULD, Circuit Judges, and MOLLOY,[*] District Judge.

Order;
Dissent by Judge Collins;
Statement by Judge O'Scannlain

---

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

# SUMMARY[**]

## Immigration

The panel denied on behalf of the court a petition for rehearing en banc in a case in which the panel held that noncitizens must receive a Notice to Appear ("NTA") in a single document specifying the time and date of the noncitizen's removal proceedings, otherwise any *in absentia* removal order directed at the noncitizen is subject to rescission pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii).

Dissenting from the denial of rehearing en banc, Judge Collins, joined by Judges Callahan, M. Smith, Ikuta, Bennett, R. Nelson, Bade, Lee, Bress, Forrest, Bumatay, and VanDyke, wrote that the panel's opinion in this case, *Singh v. Garland*, 24 F.4th 1315 (9th Cir. 2022), seriously misconstrued the language of the in absentia provision, which makes clear that an in absentia removal order may be entered so long as the alien has been served with a notice of hearing that (1) contains the date, time, and place information for the hearing that the alien failed to attend; and (2) warns the alien of the consequences of failing to appear. Accordingly, Judge Collins explained that whether the alien's earlier NTA included such information is irrelevant.

Judge Collins further wrote that the panel's erroneous decision casts doubt on the validity of potentially tens of thousands of in absentia removal orders issued in this circuit over the last two decades, and conflicts with decisions of the Sixth and Eleventh Circuits.

Respecting the denial of rehearing en banc, Judge O'Scannlain wrote that he agreed with the views expressed by Judge Collins in his dissent from denial of rehearing en banc.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

The full court was advised of the petition for rehearing *en banc*. A judge requested a vote on whether to rehear the matter *en banc*. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of *en banc* consideration. *See* Fed. R. App. P. 35.

The petition for rehearing *en banc* (Dkt. 49) is **DENIED**.



*Singh v. Garland*, No. 20-70050

COLLINS, Circuit Judge, with whom CALLAHAN, M. SMITH, IKUTA, BENNETT, NELSON, BADE, LEE, BRESS, FORREST, BUMATAY, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

The panel's published opinion in *Singh v. Garland*, 24 F.4th 1315 (9th Cir. 2022), seriously misconstrues the text of the Immigration and Nationality Act ("INA") in resolving an exceptionally important question concerning the type of notice that must be provided to an alien under that Act before an immigration court may proceed with an in absentia removal. According to the panel decision in *Singh*, an alien who is properly served with notice of the date, time, and place of his or her removal hearing but then fails to show up can have the resulting in absentia removal order set aside based on irrelevant errors in paperwork at the outset of the removal process. The panel's erroneous decision casts doubt on the validity of potentially tens of thousands of in absentia removal orders that have been issued in this circuit over the last two decades. Indeed, in the panel's accompanying unpublished decision in *Mendez-Colin v. Garland*, 2022 WL 342959 (9th Cir. 2022), the *reductio ad absurdum* has already arrived: the panel applies *Singh* to invalidate a 19-year-old removal order entered in a case in which the alien, after attending multiple hearings over nearly a year and receiving actual notice of the next one, simply dropped out of contact with his lawyer and consequently skipped the next hearing. It is little wonder that the panel's

erroneous decision—which already conflicted with a prior decision of the Sixth Circuit—has now been expressly rejected by the Eleventh Circuit. This is a paradigmatic case that cries out for further review, and I respectfully dissent from our failure to rehear this case en banc.

## I

To set the panel's analysis in context, and to make the panel's errors more apparent, it is helpful first to summarize the relevant provisions of the INA before turning to the specific facts of these two cases and then to the panel's decisions.

## A

Section 239(a) of the INA provides for two distinct types of notices that must be provided to an alien over the course of removal proceedings, which are commonly referred to as a "Notice to Appear" ("NTA") and a "Notice of Hearing" ("NOH"). *See* 8 U.S.C. § 1129(a).[1]

First, paragraph (1) of § 239(a) provides that, at the outset of removal proceedings, a "written notice (in this section referred to as a 'notice to appear') shall be given" to the alien setting forth certain enumerated categories of

---

[1] Because (unlike several other titles) title 8 of the U.S. Code has not been enacted as positive law, I will generally refer to the underlying section numbers of the INA, although I will also provide the corresponding citation to title 8. That is consistent with how the Immigration Judges ("IJs") and the Board of Immigration Appeals ("BIA") generally cite these provisions and with how they are cited in the agency's regulations. The full text of the INA, as amended, is readily available on the website of the U.S. Government Publishing Office. *See* https://www.govinfo.gov/content/pkg/COMPS-1376/pdf/COMPS-1376.pdf.

information, including (i) the "charges against the alien and the statutory provisions alleged to have been violated"; (ii) the "requirement" that the alien provide and update the "address and telephone number" at which he or she "may be contacted" about the removal proceedings; (iii) the "time and place at which the proceedings will be held," and (iv) the "consequences . . . of the failure, except under exceptional circumstances, to appear at such proceedings." 8 U.S.C. § 1129(a)(1)(D), (F), (G)(i)–(ii). The Supreme Court has strictly construed the requirements for such NTAs, holding that the use of the article "a" in § 239(a)(1)'s reference to "*a* 'notice to appear,'" as well as other textual clues, confirm that *all* of the statutorily enumerated information required to be included in an NTA must be provided in a "single document." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) (emphasis added); *see also Pereira v. Sessions*, 138 S. Ct. 2105, 2109–10 (2018) (holding that an NTA that omitted the "time or place of the removal proceedings" failed to comply with the requirements of § 239(a)(1) and was insufficient to trigger the so-called "stop-time rule" of INA § 240A(d)(1)(A)).[2]

Second, paragraph (2) of § 239(a) states that, "in the case of any change or postponement in the time and place" of such removal proceedings, "a written notice shall be given" to the alien that includes only two things: (i) "the new time

---

[2] Under the stop-time rule, an alien who has not accumulated "10 years of continuous physical presence in the United States" at the time he or she is served with an NTA is thereby ineligible to apply for cancellation of removal. *Pereira*, 138 S. Ct. at 2109.

or place of the proceedings"; and (ii) the "consequences . . . of failing, except under exceptional circumstances, to attend such proceedings."  8 U.S.C. § 1229(a)(2)(i)–(ii).  Noting that this provision also refers to "a written notice," the Court in *Niz-Chavez* stated that this smaller subset of statutorily enumerated items that are required for an NOH must likewise be provided in a "single document." 141 S. Ct. at 1483–84.

In describing what an NTA and an NOH must say about the "consequences" of failing to appear at a removal hearing, paragraphs (1) and (2) of § 239(a) both explicitly cross-reference § 240(b)(5) of the INA.  *See* 8 U.S.C. § 1229(a)(1), (2) (citing *id*. § 1229a(b)(5)).  That provision, in turn, states that "[a]ny alien who, after written notice required under paragraph (1) or (2) of section 239(a) [8 U.S.C. § 1229(a)] has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence [1] that the written notice was so provided and [2] that the alien is removable (as defined in subsection (e)(2))."  *Id*. § 1229a(b)(5)(A).[3]

The statute, however, also provides an alien with a limited ability to seek subsequently to rescind an in absentia removal order entered under § 240(b)(5).

[3] The reference to the "Service" is apparently a vestigial reference to the former Immigration and Naturalization Service ("INS"), and must therefore be construed to refer to the Department of Homeland Security ("DHS"), the agency to which the relevant functions of the INS have since been transferred. *See* 6 U.S.C. § 557.

4

Specifically, § 240(b)(5)(C) states that "[s]uch an order may be rescinded only" in two circumstances: (1) "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances"; or (2) "upon a motion to reopen filed at any time if the alien demonstrates" either (i) "*that the alien did not receive notice in accordance with paragraph (1) or (2)*" of § 239(a), or (ii) "the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien."  8 U.S.C. § 1229a(b)(5)(C) (emphasis added).  As the specific facts of these cases will make clear, the issue here concerns the meaning of this italicized phrase.

## B

### 1

Singh is a native and citizen of India.  *See* 24 F.4th at 1316.  He entered the United States illegally in October 2016 and was detained by DHS, which began removal proceedings against him.  *See id*.  On December 1, 2016, DHS personally served Singh with an NTA stating that the date and time of Singh's removal hearing were "TBD."  *Id*.  DHS released Singh, who reported that he would be residing at an address in Dyer, Indiana.

On December 6, 2016, DHS mailed an NOH under INA § 239(a)(2) to Singh at the designated Indiana address advising him that he was scheduled for a master

hearing on January 29, 2021 at 8:00 AM at the immigration court in Imperial, California. *See* 24 F.4th at 1316. On October 29, 2018, DHS sent a second NOH to Singh at the same Indiana address, informing him that the date and time of the master hearing had changed to November 26, 2018 at 1:00 PM.

Singh did not appear for the master hearing on November 26, 2018. The immigration court re-scheduled the hearing for December 12, 2018. DHS sent a third NOH to Singh at the Indiana address informing him that the date of the master hearing had changed to December 12, 2018.

Singh failed to appear for the master hearing on December 12, 2018. *See* 24 F.4th at 1316. Accordingly, the IJ proceeded to consider whether Singh should be ordered removed in absentia under INA § 240(b)(5)(A). The IJ found that Singh had been provided both written notice of the time, date, and location of the hearing and a written warning that failure to attend the hearing, for other than exceptional circumstances, would result in the issuance of an order of removal if removability was established. The IJ determined that DHS had submitted sufficient evidence to establish Singh's removability as alleged in the NTA and that Singh's failure to appear was not due to exceptional circumstances. 24 F.4th at 1316. Finally, the IJ found that Singh's failure to appear constituted an abandonment of any pending applications for relief. The IJ therefore ordered him removed in absentia. *Id*.

In April 2019, Singh filed a motion to reopen with the immigration court.

24 F.4th at 1316. Singh conceded that the NOHs had arrived at the Indiana address he had designated but he claimed that he never actually received them due to "a failure in the inner workings of the household." *Id.* He nonetheless argued that he did not receive proper notice under § 239 because his NTA lacked the hearing date and time information. The IJ denied the motion and the BIA affirmed.

## 2

Mendez-Colin is a native and citizen of Mexico. On August 25, 2001—over 20 years ago—Mendez-Colin attempted to gain entry to the United States through the San Luis Port of Entry vehicle lane by falsely claiming to be a U.S. citizen. In doing so, he also attempted to gain entry for two other aliens who were in the vehicle. He was detained and the next day, on August 26, 2001, the INS[4] personally served Mendez-Colin with an NTA charging him as removable. The NTA indicated that the date and time of Mendez-Colin's master hearing was "To be set." Mendez-Colin was released from detention.

Between October 2001 and July 2002, Mendez-Colin, either directly or through counsel, received at least seven NOHs, and he appeared in person at multiple hearings, together with counsel. At a hearing on July 23, 2002 at which Mendez-Colin was present with his attorney, the IJ found that the charge of removability had been sustained by clear and convincing evidence. However,

---

[4] As noted earlier, the relevant functions of the INS have since been transferred to DHS. *See supra* note 3.

Mendez-Colin expressed a desire to apply for cancellation of removal, and the IJ scheduled an individual hearing for September 15, 2003 to consider that claim for relief. A confirming NOH was served on July 23, 2002, informing Mendez-Colin that an individual hearing was scheduled in his case for September 15, 2003 at 9:00 AM.

Thereafter, Mendez-Colin failed to stay in contact with his attorney, which led the attorney to file a motion to withdraw as counsel of record. That motion was still pending on September 15, 2003, the scheduled date for Mendez-Colin's individual hearing. Mendez-Colin's attorney appeared at that hearing, but Mendez-Colin did not. The IJ found that Mendez-Colin had been duly notified of the date, time, and place of the hearing but failed, without good cause, to appear as required. Having already previously found that Mendez-Colin was removable, the IJ found that Mendez-Colin had abandoned any claims for relief from removal and ordered him removed in absentia pursuant to § 240(b)(5). The court also granted Mendez-Colin's attorney's motion to withdraw, subject to remaining the attorney of record for the limited purpose of service of the in absentia order.

On December 10, 2003, Mendez-Colin through his same attorney filed a motion to reopen his removal proceedings. The motion claimed that Mendez-Colin had failed to appear at the September 15 individual hearing because he thought it was scheduled for 1:00 PM, but the motion was not accompanied by any

declaration from Mendez-Colin or any other evidence to support this assertion. The IJ denied the motion on December 31, 2003. Noting that Mendez-Colin had failed to maintain contact with his attorney, the IJ concluded that his "failure to appear for his individual hearing appears to stem from a lack of interest, rather than a scheduling error." Moreover, the IJ held that, in light of Mendez-Colin's failure to submit any supporting statement or proof, "the blanket assertion in the motion that [Mendez-Colin] failed to appear because he mistakenly believed that his hearing was scheduled for 1:00PM is insufficient to establish 'exceptional circumstances.'" The IJ further noted that the NOH had been properly served and that Mendez-Colin did not contest that he had received the NOH.

Mendez-Colin did not appeal the IJ's decision to the BIA. Instead, on February 4, 2004, he filed a second motion to reopen. In this motion, Mendez-Colin expressly stated that he did not "challenge the propriety of [the Immigration] Court's order deporting [him] *in absentia*." He therefore did *not* seek rescission of his removal order under INA § 240(b)(5)(C). Instead, he sought reopening under the general reopening provisions of § 240(c)(7) so that he could pursue his application for cancellation of removal based on newly available material evidence. *See* 8 U.S.C. § 1229a(c)(7). In making this motion, Mendez-Colin recognized that a separate provision of the INA—§ 240(b)(7)—generally prohibits granting cancellation of removal and certain other forms of relief to anyone who

has been ordered removed in absentia during the 10 years following the issuance of that order, but he noted that this 10-year bar on relief only applied if, in addition to receiving notice under § 239(a), the alien also received "oral notice" of the consequences of failing to appear at a removal hearing. *See* 8 U.S.C. § 1229a(b)(7). Because he had not received such oral notice, Mendez-Colin argued, he was not subject to this bar.

The IJ denied the second motion to reopen on April 19, 2004. The IJ noted that INA § 240(c)(7) generally limits aliens to a single motion to reopen, and Mendez-Colin had already unsuccessfully filed a prior such motion. Moreover, the motion was filed outside the 90-day time limit that generally applies to motions to reopen under § 240(c)(7), *see* 8 U.S.C. § 1229a(c)(7)(C)(i), and the motion failed to make the showing required for such a motion. Mendez-Colin appealed this decision to the BIA. On November 4, 2004, the BIA dismissed the appeal. Noting that Mendez-Colin had already been removed from the United States, the BIA concluded that his removal counted as a "[d]eparture" and therefore "constitute[d] a withdrawal of the appeal," pursuant to 8 C.F.R. § 1003.4 (2004). The BIA therefore concluded that the IJ's decision was "final to the same extent as though no appeal had been taken."

More than 15 years later, in January 2020, Mendez-Colin filed a motion with the BIA requesting that the BIA reinstate his 2004 appeal or remand the matter to

the IJ. Mendez-Colin noted that a subsequent Ninth Circuit decision in 2010 had clarified that an involuntary removal did not give rise to a withdrawal of appeal. He also argued that the 2003 in absentia removal order was invalid because the 2001 NTA that initiated his removal proceedings had failed to specify the time and date of his first hearing. Construing Mendez-Colin's motion as a motion to reconsider the 2004 dismissal, the BIA denied the motion as untimely, noting that it "was filed more than 15 years after the statutory deadline for filing a motion to reconsider before the Board." *See* 8 U.S.C. § 1229a(c)(6)(B) (setting a 30-day deadline). The BIA also declined to exercise its sua sponte authority to reconsider, noting that the motion was filed more than 10 years after the asserted change in the law. To the extent that Mendez-Colin sought remand to the IJ due to defects in his 2001 NTA, the BIA concluded that any such defects were irrelevant in light of the subsequent NOHs that were properly served on him.

## C

The panel granted both petitions. In its published opinion in *Singh*, the panel first held that Singh's NTA was plainly defective under *Niz-Chavez* because it did not contain, in a single document, all of the information required by § 239(a)(1), including the date and time of his removal hearing. *See* 24 F.4th at 1318–19. The panel rejected the Government's efforts to confine *Niz-Chavez* to the context of the stop-time rule, and it therefore held that the NTA did not provide valid notice for

purposes of the in absentia provisions of the INA.  *See id*.  On this point, the panel noted that a decision of the Fifth Circuit had reached the same conclusion.  *See id*. at 1319 (citing *Rodriguez v. Garland*, 15 F.4th 351, 355 (5th Cir. 2021)).

The panel next rejected the Government's further, two-step argument that (1) under § 240(b)(5)(A), the notice requirement for an in absentia removal is satisfied if the NOH alone is valid, regardless of whether the earlier NTA was valid; and (2) here, the NOHs sent to Singh were all valid under § 239(a)(2).  The panel acknowledged that, as the Government emphasized, § 240(b)(5) allows an in absentia order to be entered if the alien was served with notice "under paragraph (1) *or* (2)" of § 239(a).  24 F.4th at 1319 (quoting 8 U.S.C. § 1229a(b)(5)(A) (emphasis added)).  Despite this use of the disjunctive, the panel held that valid notice was required under both paragraph (1) and paragraph (2)—that is, both the original NTA and the NOH for the current hearing date had to meet the respective notice requirements of paragraph (1) and paragraph (2).  24 F.3d at 1319–20.

On the same day it decided *Singh*, the panel issued a memorandum disposition granting Mendez-Colin's petition for review.  *Mendez-Colin*, 2022 WL 342959, at *1.  "Noncitizens must receive a Notice to Appear, in a single document, with the time and date of their hearing before the government can order them removed in absentia."  *Id*.  "Because Mendez-Colin did not receive statutorily compliant notice before his removal hearing, the in absentia removal order issued

at that hearing is invalid." *Id*.

## II

The panel's decision in *Singh* misconstrues the language of the in absentia provision, which makes clear that an in absentia removal order may be entered so long as the alien has been served with an NOH that (1) contains the date, time, and place information for the hearing that the alien failed to attend; and (2) warns the alien of the consequences of failing to appear. Whether the earlier NTA included such information is irrelevant.

## A

As explained earlier, INA § 240(b)(5)(A) allows an IJ to enter an in absentia removal order if DHS establishes that "written notice required under paragraph (1) *or* (2) of section 239(a) [8 U.S.C. § 1229(a)]" was provided and that the alien is removable. 8 U.S.C. § 1229a(b)(5)(A) (emphasis added). The reference is obviously to the *particular* notice—either an NTA (which is a notice "under paragraph (1)") or an NOH (which is a notice "under paragraph . . . (2)")—that notified the alien of the *particular* hearing that the alien missed. And once that in absentia order has been entered, then (absent exceptional circumstances set forth in a timely motion) the alien may obtain rescission of the order only by showing that he or she did not receive the requisite "notice in accordance with paragraph (1) or (2)," as the case may be. *Id*. § 1229a(b)(5)(C)(ii). Accordingly, where—as in both

*Singh* and *Mendez-Colin*—the alien failed to attend a hearing that was the subject of a properly served NOH that correctly stated the date, time, and place of that hearing, it is irrelevant whether the earlier NTA did or did not provide such information.  Several textual clues confirm this understanding of the relevant statutory language.

First, the use of the disjunctive "or" generally "indicates alternatives and requires that they be treated separately."  *Bunker Hill Co. Lead & Zinc Smelter v. U.S. Env'l Prot. Agency*, 658 F.2d 1280, 1283 n.1 (9th Cir. 1981); *see also United States v. Woods*, 571 U.S. 31, 46 (2013) (noting that the "ordinary use" of "the conjunction 'or'" is "almost always disjunctive" and signifies that the "items are alternatives").  Accordingly, § 240(b)(5)(A)'s disjunctive statement that an in absentia order can been entered if notice was provided under "paragraph (1) or (2)" is properly understood as referring in the alternative to whichever of the two possible forms of notice (NTA or NOH) might have been used to notify the alien of that particular hearing.  Likewise, § 240(b)(5)(C)(ii)'s requirement that the alien show that he or she did not "receive notice in accordance with paragraph (1) *or* (2)" only requires the alien to show that the *particular* alternative on which the Government relied to obtain the in absentia order under § 240(b)(5)(A) (*i.e.*, an NTA or an NOH) did not comply with the applicable requirements of the relevant paragraph.  Indeed, given that § 240(b)(5) sets forth the consequences of failing to

14

"attend *a* proceeding under this section," it is unsurprising that it uses the disjunctive "or" to refer to whichever of the two types of notices happened to be used for the particular hearing that the alien missed.  8 U.S.C. § 1229a(b)(5)(A) (emphasis added).

Second, in describing the Government's burden in obtaining an in absentia removal order, § 240(b)(5)(A) requires the Government to prove, by "clear, unequivocal, and convincing evidence that *the* written notice"—singular—"was so provided."  8 U.S.C. § 1229a(b)(5)(A) (emphasis added).  The use of this "article coupled with a singular noun" denotes a "discrete document," *see Niz-Chavez*, 141 S. Ct. at 1483, and should therefore be understood to refer to the one of the two alternative forms of notice that may have been used for that particular hearing. That is especially true given that paragraph (1) and paragraph (2) of § 239(a) both refer to the respective documents described therein (*viz.*, an NTA and an NOH) as a "written notice."  8 U.S.C. § 1229(a)(1), (2)(A).  Because "grammar and usage establish that 'the' is a function word indicating that a following noun . . . has been previously specified by context," *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (simplified), the phrase "*the* written notice" clearly refers to the particular notice, under either paragraph (1) or paragraph (2), for the specific "proceeding" that the alien "d[id] not attend."  8 U.S.C. § 1229a(b)(5)(A) (emphasis added).

Third, this reading of § 240(b)(5) comports with common sense.  Removal

15

proceedings may drag out for many years and involve a half dozen or more

hearings.  It makes no sense to read the statute as saying that, if an alien attends the

first several hearings but then skips the next hearing—one for which an otherwise

valid NOH was served—the alien can obtain rescission by showing that, years

earlier, the NTA that initially opened the case failed to include a date and time for

a hearing.  Yet that absurd result is precisely what the panel decreed in *Mendez-*

*Colin*.

**B**

The panel in *Singh* gave three reasons for reaching its contrary conclusion,

but all of them fail.

**1**

First, the panel held that, "by the plain text of paragraph (2) of § 1229(a)

[INA § 239(a)] there can be no valid notice under paragraph (2) without valid

notice under paragraph (1)."  24 F.4th at 1319.  Thus, if the NTA at the outset of

the removal proceedings failed to include a date and a time, the panel reasoned,

*any* subsequent NOH simply does not count as a "notice required under

paragraph . . . (2)" of § 239 for purposes of the in absentia removal provision in

§ 240.  8 U.S.C. § 1229a(b)(5)(A).  Because, according to the panel, a notice under

"paragraph . . . (2)" requires that there also have been a "valid notice under

paragraph (1)," the "or" in § 240(b)(5) is effectively converted into an "and"—both

options require valid notice under paragraph (1). This argument is deeply flawed.

In making this argument, the panel emphasized that paragraph (2) of § 239(a) describes the "written notice" that must be given when there is a "*change or postponement* in the time and place" of the removal proceedings. 8 U.S.C. § 1229(a)(2)(A) (emphasis added). The panel concluded that "a 'change' in the time or place is *not possible*" if the earlier NTA failed to include a date and time. 24 F.4th at 1321 (emphasis added). That is wrong. If the time and place of a hearing were listed in an NTA as "To Be Set" or "TBD," a subsequent NOH that newly provides a particular date, time, and place certainly reflects, in the ordinary sense of the term, a "*change* . . . in the time and place" that was previously listed. 8 U.S.C. § 1229(a)(2)(A) (emphasis added). *See Change*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981 ed.) ("an instance of making or becoming different in some particular"). The panel's fundamental rationale for linking the validity of a notice under paragraph (2) to the validity of an earlier notice under paragraph (1) therefore collapses.

The panel's opinion nonetheless contends that its argument on this score is supported by *Pereira*, but that too is wrong.

As noted earlier, the Court held in *Pereira* that, to qualify as a "notice to appear under section 239(a) [8 U.S.C. § 1229(a)]" within the meaning of the stop-time rule in § 240A(d)(1), *see* 8 U.S.C. § 1229b(d)(1), an NTA must contain all of

the information listed in § 239(a)(1), including the time and place of the hearing. 138 S. Ct. at 2109–10. In dissent, Justice Alito argued that "the cross-reference to 'section 1229(a),' as opposed to 'section 1229(a)(1)," supported a contrary conclusion, "because if Congress had meant for the stop-time rule to incorporate the substantive requirements located in § 1229(a)(1)"—as opposed to the notice requirements of that subsection more generally, including paragraph (2)—"it presumably would have referred specifically to that provision and not more generally to 'section 1229(a).'" 138 S. Ct. at 2123 (Alito, J., dissenting). The Court rejected this argument, stating that "the broad reference to § 1229(a) is of no consequence, because, as even the Government concedes, only paragraph (1) bears on the meaning of a 'notice to appear.'" *Id.* at 2114. The Court further stated that, "[i]f anything," paragraph (2) "actually bolsters" the Court's conclusion that the stop-time rule's reference to a "notice to appear" requires that all information required by paragraph (1), including time and place information, have been included in the NTA in order "to trigger the stop-time rule." *Id.* By referring to a "change or postponement," the Court concluded, "paragraph (2) *presumes* that the Government has already served a 'notice to appear'" that contained such time and place information, because "[o]therwise, there would be no time or place to 'change or postpon[e].'" *Id.* (emphasis added).

Seizing on this latter comment, the panel concluded that the Court thereby

supposedly "adopted" its view that it is simply "*not possible*" to characterize as a "change . . . in time or place" an NOH that supplies time and place information that was omitted from an NTA. 24 F.4th at 1320 (emphasis added). The Court did no such thing. The Court was construing the requirements of paragraph (1), which it held required an NTA to include time and place information in order to qualify as a "notice to appear" for purposes of the stop-time rule. That reading of paragraph (1) is, as the Court explained, "bolster[ed]" by paragraph (2)'s use of the phrase "change or postponement in the time and place" in describing when an NOH is required, because that phrasing clearly reflects a *presumption* that the NTA *should* already have provided time and place information. 138 S. Ct. at 2114. But it is quite another thing to say, as the panel does here, that it is not even "possible" to characterize a substitution of a "TBD" notation with a specific time and place as being a "change," much less that an NOH that does so is invalid *under paragraph (2)*. The Court had no such issue before it, and the panel's out-of-context quotation from *Pereira* does not support the much broader and different proposition it adopts.

Moreover, as the Government notes in its rehearing petition, the panel took its own argument several steps further. Even if the panel were correct that the first NOH that follows a defective NTA does not count as a "change" in the time and place, the same cannot be said of a subsequent NOH, which obviously "change[s]"

or postpone[s]" the time in the prior NOH. But under the panel's flawed reading of paragraph (2), the validity of an NOH issued years into a multi-hearing removal proceeding turns on its provenance as reflected in the *first* link in the chain of notices. That makes no sense, and nothing in the language of the INA requires such an extraordinary result.

**2**

Second, the panel stated that § 239(a)(1) "begins with unambiguous definitional language, explaining that 'written notice' is 'in this section referred to as a "notice to appear."'" 24 F.4th at 1320 (quoting 8 U.S.C. § 1229(a)(1)). According to the panel, that means that "*any* reference to written notice" in § 239 "is the 'Notice to Appear' defined in paragraph (1) with its accompanying enumerated requirements." *Id.* (emphasis added). And because the requirements for an NOH in paragraph (2) of § 239 refer to "written notice," the panel concluded, a document that contains only the two items listed in that paragraph, by itself, would not count as "'written notice' under § 1229(a) [INA § 239(a)]." 24 F.4th at 1320. Every step of this analysis is wrong.

As an initial matter, the panel gets its definition exactly backwards. Paragraph (1) defines the phrase "notice to appear" as a particular type of "written notice," *viz.*, one that contains the enumerated list of information. Paragraph (2) defines a different type of "written notice" that requires only a limited subset of

20

information.  The panel is thus quite wrong in reading paragraph (1) as defining the

broader phrase "written notice" to mean a "notice to appear."  Nor does paragraph

(1) establish the startling proposition that, "[t]hroughout § 1229(a) [INA § 239(a)],

then, *any reference to written notice* is the 'Notice to Appear' defined in paragraph

(1) with its accompanying enumerated requirements."  24 F.4th at 1320 (emphasis

added).  Taken literally, that would presumably mean (in contradiction to what

even the panel itself seemed to recognize elsewhere in its opinion) that every

"written notice" required under paragraph (2) refers to an NTA and that therefore

every NOH under paragraph (2) must itself replicate the entirety of the information

required under paragraph (1).  That, of course, ignores the plain language of the

two paragraphs, which requires in an NOH under paragraph (2) only a subset of the

information required in an NTA under paragraph (1).  *See also Pereira*, 138 S. Ct.

at 2114 ("[O]nly paragraph (1) bears on the meaning of a 'notice to appear.'").

The fact that the panel got its definition backwards fatally undermines its

reasoning.  There are two different types of "written notice"—a "notice to appear"

and a "notice of hearing"—and the statute does not define "written notice" as

meaning a "notice to appear."  Thus, the term "written notice" encompasses the

different notices described in both paragraph (1) and paragraph (2), whereas the

term "notice to appear" is more specific and refers only to the notice described in

paragraph (1).  Section 240(b)(5) uses the broader term and omits the narrower

term: it requires a single "written notice . . . under paragraph (1) or (2)" of § 239(a).  8 U.S.C. § 1229a(b)(5)(A), (C)(ii).  This sharply contrasts with other sections of the INA—such as the stop-time provision at issue in *Pereira* and *Niz-Chavez*—in which Congress has referred specifically to a "notice to appear." 8 U.S.C. § 1229b(d)(1).

**3**

Third, the panel held that the structure of § 239(a) supported its conclusion. According to the panel, because paragraph (2) of § 239(a) merely sets forth what is needed when there is a change in time or place, and "does not repeat the long list of requirements for written notice contained in paragraph (1)," any notices under paragraph (2) are meant to be "additions to, and not alternatives to, the Notice to Appear described in paragraph (1)."  24 F.4th at 1320.  A contrary reading, the panel asserted, would allow the Government "a textual backdoor to circumvent the written-notice requirements enumerated in paragraph (1)."  *Id*.  The problem with this reasoning is that, as explained earlier, Congress's use of the disjunctive in § 240(b)(5) means that the validity of an in absentia removal turns only on which of the two types of notices was provided for that particular hearing.  In cases in which the notice was provided by an NOH, Congress thus decided to require only a valid NOH (with its fewer requirements), and not a valid NTA, in order to permit in absentia removal.  Contrary to what the panel thought, it does not "circumvent"

anything for a court to respect that legislative choice.

## III

In addition to being manifestly wrong, the panel's analysis in *Singh* conflicts with the decisions of two other circuits and threatens to invalidate potentially tens of thousands of in abstentia removal orders previously executed in this circuit. These additional considerations underscore why we should have reheard this case en banc.

## A

In 2019, the Sixth Circuit held that the delivery of an NOH under paragraph (2) to the alien's designated address was sufficient notice to support an in absentia removal order—even though the NTA under paragraph (1) was invalid. *See Santos-Santos v. Barr*, 917 F.3d 486, 492 (6th Cir. 2019); *see also id*. at 492–93 (holding that the alien had failed in his effort to show that the NOH had never actually been received at the correct address). This construction of § 240(b)(5) is directly contrary to the panel's holding here.

On July 19, 2022, the Eleventh Circuit expressly rejected the panel's holding and reasoning in this case. *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312 (11th Cir. 2022). The Eleventh Circuit held that "in absentia removal is lawful so long as the government provided notice *for whichever hearing was missed*, which means reopening is available if the notice for that hearing was not

provided." *Id.* at 1316 (emphasis added). Thus, it concluded that an NOH under paragraph (2) of § 239(a) will support an in absentia removal even if the earlier NTA was defective under paragraph (1). *See id.* In reaching this conclusion, the Eleventh Circuit "disagree[d] with the Ninth Circuit's interpretation of the in absentia removal provisions" in *Singh*. *Id.* at 1318 n.3. In explaining its disagreement, the Eleventh Circuit expressly made two of the same points discussed above. First, the court concluded that an NOH can constitute "a 'change or postponement in the time and place' of removal proceedings even if the initial hearing information appeared in a follow-on notice of hearing." *Id.* Second, the court noted that the panel's holding that "written notice" means "notice to appear" was plainly inconsistent with the statutory language. *Id.*

Therefore, the Sixth Circuit and the Eleventh Circuit agree that a valid NTA is not necessary for an in absentia removal if the relevant notice was provided in a valid NOH. That is an additional consideration that warranted en banc rehearing here.[5]

---

[5] As the Eleventh Circuit recognized in *Dacostagomez-Aguilar*, *see* 40 F.4th at 1318 n.4, the Fifth Circuit's panel opinion in *Rodriguez v. Garland*, 15 F.4th 351 (5th Cir. 2021), does not squarely address the question whether an NOH that contains all of the information required by § 239(a)(2) is, by itself, sufficient to uphold an in absentia removal order under § 240(b)(5). The Fifth Circuit's panel decision in *Rodriguez* held only that, for purposes of applying § 240(b)(5), a defective NTA is not cured by a subsequent NOH and remains a defective NTA. *Id.* at 355–56. Although the facts of *Rodriguez* arguably presented the distinct issue resolved by the Sixth, Ninth, and Eleventh Circuits, the Fifth Circuit did not

**B**

Moreover, the panel's decision in *Singh* threatens to nullify an extremely large number of in absentia removal orders previously executed in this circuit. Since the relevant statutory language was adopted in 1996, there likely have been at least tens of thousands of aliens who have been ordered removed in absentia after their initial NTAs did not specify time and date information.  Between January 1, 2008 and April 18, 2022, the United States issued more than 545,000 in absentia removal orders.  *See* Exec. Off. for Immigr. Rev., Adjudication Statistics: In Absentia Removal Orders (July 15, 2022), https://www.justice.gov/eoir/page/file/1243496/download (last visited October 4, 2022).  And as *Mendez-Colin* demonstrates, the Government has been issuing NTAs with the date and time "to be set" since at least 2001, and the Government's

---

specifically address that question.  *See Cueto-Jimenez v. Garland*, 2022 WL 1262103, at *2 (5th Cir. 2022) (unpub.) (making a similar observation about the limited holding in *Rodriguez*).  However, the law in the Fifth Circuit appears to be unsettled at this point.  In connection with the denial of rehearing en banc in *Rodriguez*, several judges proceeded to opine on the significance of § 240(b)(5)'s disjunctive phrasing, and they differed as to the correctness of the sort of analysis adopted by the panel here in *Singh*.  *Compare Rodriguez v. Garland*, 31 F.4th 935, 935 (5th Cir. 2022) (Duncan, J., concurring in the denial of rehearing en banc) *with id*. at 938 (Elrod, J., dissenting from the denial of rehearing en banc).  The picture in the Fifth Circuit is further muddied by a subsequent published decision distinguishing *Rodriguez* and holding that, despite an earlier NTA that lacked date and time information, a subsequent valid NOH will support removal in absentia if the alien fails to attend the hearing noticed in the NOH and the alien "in fact receives the NOH (or does not dispute receiving it)."  *Campos-Chaves v. Garland*, 43 F.4th 447, 448 (5th Cir. 2022).  That reasoning and result, of course, directly conflict with the reasoning and result in *Mendez-Colin* here.

petition for rehearing notes that this was the standard practice for many years. Thus, if left in place, the panel's holding would likely invalidate a vast majority of such orders in this circuit, undoing potentially tens of thousands of in absentia removal orders, some decades old.

We need not look beyond the facts of these cases to see the remarkable breadth of the panel's holding. Mendez-Colin received his original NTA *over 20 years ago*. His initial removal proceedings ended 18 years ago. And during those proceedings, he attended multiple hearings, received multiple valid notices of those hearings, and received valid notice of the particular hearing at which he was ordered removed in absentia. Yet, as the panel has decreed, his decades-old removal order is now invalid. That result is egregiously wrong and reflects the disturbingly broad implications of the panel's erroneous opinion.

*    *    *

For the foregoing reasons, I respectfully dissent from our failure to rehear this case en banc.



FILED

OCT 12 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

O'SCANNLAIN, Circuit Judge,[1] respecting the denial of rehearing en banc:

I agree with the views expressed by Judge Collins in his dissent from denial of rehearing en banc.

---

[1] As a judge of this court in senior status, I no longer have the power to vote on calls for rehearing cases en banc or formally to join a dissent from failure to rehear en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 35(a). Following our court's general orders, however, I may participate in discussions of en banc proceedings. *See* Ninth Circuit General Order 5.5(a).